Noto?, J.,
delivered the opinion of the court:
These three cases are in effect suits in equity on behalf of communal owners of property in the Cherokee country and are against the same defendant, the Cherokee Nation. The proceedings now before us, motions to enlarge the judgments heretofore rendered, are in effect proceedings against a common fund in equity, money in the Treasury of the United States in which all of the parties have an identical interest. The cases will, therefore, be considered together.
Since the final decrees were rendered the Executive of the Cherokee Nation, the Principal Chief, has given a consent that the numbers of the Delawares and the Shawnees named in the decrees be changed from 759 in the one case to 876, and in the other from 624 to 830, and that the amount per capita, $270.44, the proportional share of the Delawares and Shawnees in the *142 fund, be increased to $295.35, the amount appropriated by the Cherokee government to those who were “Cherokees by blood.” The effects of these changes would be to enlarge the recovery against the Cherokee Nation, in the case of the Delawares from $205,265 to $258,726.00, and in the case of the Shawnees from $168,604.54 to $245,140.50.
In the case of the freedmen, the legislature of the Cherokee Nation, the National Council, has passed an act also according $295.35 per capita to the freedmen, though this is not absolute, inasmuch as the amount so conceded is an element of a proposed compromise.
On these consents and on this statute and on stipulations of defendant’s counsel, the claimants in the eases of the Delawares and Shawnees have moved to enlarge the decrees, and, in the case of the freedmen, for a commission to take a new census of the complainants, and for a judgment, subject to revision, of $1,300,000 instead of $903,365, the amount awarded by the decree heretofore entered. The court has heretofore considered the questions involving the enlargement of the recoveries (30 C. Cls. R., pp. 172, 180), but out of respect to the executive and legislative departments of the Cherokee Nation we have again deliberated upon the question of allowing the motions.
As to the proposition to change the number of the Delawares and Shawnees, it is believed that some misapprehension must exist on the part of the defendant’s officers as to the significance of those numbers as used in the decrees. In the case of the Delawares, the consent and stipulation of the defendant recites that “in the decree heretofore entered in this case the number of Delawares entitled to participate in the benefit of the Delaware-Cherokee agreement of April 8, 1867, was fixed at the number of 759.” And again, “ under the said decree heretofore passed in this case, to wit, in 1893, the Secretary of the Interior caused a new and authentic roll and census to be made,” “ which said roll contains the names of 876 persons as the correct number entitled to benefits under said decree.” In the case of the Shawnees the consent and stipulation recites that “ by reason of recent investigations carried on, and the making of a roll of said Shawnees,” “it has been made evident that the number of Shawnees legally entitled to participate in the benefits of the judgment and decree heretofore rendered herein *143 is largely in excess of tbe number heretofore stipulated, to wit, 737, by reason of natural increase.*’
Tbe fact, however, is that the decrees do not direct that the funds recovered shall be paid to 759 Delawares and 624 Shawnees, nor take those numbers as expressing the existing number of those complainants. It is utterly immaterial what the present number of the Delawares and Shawnees may be. The numbers named in the decrees were used by the court merely to ascertain what was the proportion which the Delawares or Shawnees bore to the whole number of the nation, and thereby to ascertain a fixed and definite sum total for which the Cherokee Nation would be liable in each of these suits. To ascertain that proportion, the court, with the consent of all parties, resorted to a census taken some years ago, showing the number of each class of Cherokee citizens who were supposed to be communal owners of the common property. If the actual numbers of Delawares and Shawnees are now to be reaseertained, the actual numbers of the Cherokees by blood, the adopted whites, the Creeks, the Choctaws, and the negroes, i. e., the actual number of all the communal owners, should also be reascertained. The object of the court, when using the numbers named in the decrees, was not to indicate the number of Delawares and Shawnees who were to be paid by the Secretary of the Interior, but the ratio which they, as a body of communal owners, bore to the whole number of the nation, and thereby the proper shares in the fund which would be set apart for them as collective bodies.
The sum total, then, which the Delaware tribe and the Shawnee tribe, each as a body of communal owners, should recover from the Cherokee Nation, being thus ascertained and fixed by decree, the amount awarded in each suit to the tribe will be distributed among whatever individuals are entitled to participate therein. The Secretary of the Interior is the official guardian of the Delawares and Shawnees. He is charged by law with the duty of ascertaining their individual identity, of determining who are Delawares and who are Shawnees, and of maintaining their treaty rights. The question of identity of individuals entitled to the benefits of a treaty, being in its nature political and within the Secretary’s official jurisdiction, the court would adopt his determination if the complainants were to be named individually in the decree. By placing the *144 funds in bis bands for distribution and prescribing tbe principles under wliicb they are to be distributed and tbe class of persons who are entitled to participate in tbe distribution, and leaving to tbe Secretary only tbe responsibility of ascertaining and determining who those individuals are, tbe court reaches the desired end more quickly and more conveniently than by setting forth in each decree tbe names of tbe complainants who are entitled to recover. Tbe Secretary, after deducting counsel fees, costs, and expenses, will pay tbe fund awarded to tbe Delaware tribe to those persons who are Delawares, and tbe fund awarded to the Shawnee tribe to those persons who are Shawnees, and will distribute tbe money among whatever number of Delawares may be entitled to participate in tbe one fund and among whatever number of Shawnees may be entitled to participate in tbe other fund.
As to tbe proposition to increase the amount per capita so that tbe Delawares, Shawnees, and freedmen shall receive the same amount that was received by those who were Cherokees by blood, the court is disposed to comply with the requests of the Principal Chief and the National Council, but after mature deliberation remains of the opinion that it can not exceed its jurisdictional power by awarding a larger recovery than that contemplated and authorized by the jurisdictional act, and that it can not for nonjudicial prarposes take p>art in the internal administration of the affairs of the Cherokee Nation. Consent does not confer jurisdiction. •
In the previous decisions on this subject we have so held. (30 C. Cls. R., pp. 172, 180.) In the first place, the fact that there is money now in the Treasury of the United States due and owing to the Cherokee Nation, which can be reached by the decree and apqdied to satisfy the judgment- is an accident in the case, occurring since the jurisdictional act, which no more enlarges the authority of the court than if it had been piaid over to the defendant and used for governmental purposes. In the second pdace, if this money -had been paid over by the United States, or had never existed, it would be plainer that the court can not go down into the Cherokee country and administer absolute justice to Cherokee citizens. The United States when they passed the jurisdictional act were interested only in making sure that the Indians and freedmen should be protected in their treaty rights to their distributive shares in *145 •the funds referred to. When the court awards those distributive shares its authority ends. The excess paid to those who were Cherokees by blood is the loss of the Cherokee Nation, not the loss of these complainants. In the third place, 2,011 adopted whites have.been put forward as Cherokee citizens in all of these three cases and counted as being a part of the communal owners, .and this was conceded to be the fact in tlie two cases affirmed by the Supreme Court. If the amount per cap-ita now demanded should be awarded to all of the complainants, the interest, if any, of the adopted whites in the fund will, substantially, be destroyed. This court has not decided, and does not now decide, that they are entitled to participate; but no court of equity, upon such a record, would disregard their possible rights and pay away money which may be theirs, merely because they are not within its jurisdiction. Moreover, it is not essential that this court shall thus exceed its powers. The Cherokee government can accomplish its avowed purpose of making the complainants equal in the amount received with those who were Cherokees by blood without the interposition of this court. The money necessary can be appropriated out of the balance of the fund to be paid over by the United States and be paid by the' Cherokee Nation to its own citizens, the Delawares, Shawnees, and freedmen.
In the case of Blackfeather some further proceedings are necessary.
After the case had come back from the Supreme Court and the mandate of affirmance had been filed the complainant applied for judgment, and tlie court upon such application, on the 21st of January, 1895, made the following order:
“ Ordered, That attorney for plaintiff prepare decree to be entered upon mandate of the Supreme Court herein and submit the same to the attorney for defendants on or before Wednesday next. Should parties be unable to agree upon form of decree the points of difference will be stated in writing and sent to the conference room with the draft decree.’
A decree was subsequently presented to the court, which was thereupon entered as the decree of the court.
That decree so entered by consent contained the following orders and recitals:
“And it is further adjudged and decreed as to the participation of the Shawnees in the two funds referred to in the two statutes of the Cherokee Nation hereinbefore declared uncon *146 stitutional, wbicb sums amount iu aggregate to $593,625, that such distribution shall be based on the agreement and stipulation made by and between the said Cherokee Nation and the said Shawnees, and approved by the Supreme Court of the United States, to wit, 737 Shawnee i>ersons, and that the fund so ascertained, to wit, the sum of $21,852.05, be paid by the treasury of the Cherokee Nation, or by the Secretary of the Interior of the United States, to the individual Shawnees, per capita (according to the above number of 737 Shawnee persons), who would have been entitled to the same if the unconstitutional restrictions aud discriminations in said statutes had not existed.
“And it is further adjudged and decreed by the court that the complainants, the Shawnee Indians, be also entitled to participate in the distribution of the fund of $6,640,000 above referred to and described, and that said distribution be based on the agreement made and entered into by and between the parties herein, and approved by the Supreme Court of the United, States, allowing the said comptlainants, the Shawnees, 737 persons.”
The court now finds, on an inspection of the mandate of the Supreme Court, that that tribunal did not approve “the agreement and stipulation made by and between the Cherokee Nation and the said Shawnees” increasing the number of Shawnees, taken as a basis for calculation, from 624 to 737; that, on the contrary, the Supreme Court refused to act upon it, and remitted the matter to this court for determination by the following order:
“ It is now here ordered by the court that leave be, and the same is hereby, granted the clerk to issue the mandate in this cause, and leave is given to apply to the Court of Claims for a reformation of the judgment in accordance with the stipulation of counsel.
“ January 7,1895.”
On the 29th April, 1895, this court reiterated its order of January 21,1895. A motion had been made by the complainant to introduce the element of interest into the recovery. The court overruled the motion and application in the following words: “Overruled under opinions in Journeycake and Whitmire v. Cherokee Nation, present term. The decree will be entered in form prescribed in case of Journey cake.”
The decisions in the cases of Journeycake and Whitmire (30 C. Cls. R., pp. 172, 180), 18th March, 1895, had determined that the court could not change the basis of recovery by changing the number of the Delawares named in the decree, *147 and could not exceed its jurisdictional authority by awarding to the complainants more than their share in the funds.
It consequently appears that there was introduced into the, decree in this case of Blac.kfeatlier a recovery of more than $19,000, without the authority or adjudication of either court, and against an express decision of this court.
, It is therefore ordered by the court on its own motion that the final decree in the case of Blackfeather v. The Cherokee Nation, entered and filed May 21, 1895, be vacated and set aside, and that a decree be prepared and submitted to the court by the attorney of the complainant as directed by the orders filed January 21,1895, and April 29,1895.
In the same case the motion of the complainant, filed November 21, 1895, “for final determinate decree” is overruled.
In the same case the defendant’s motion for a new trial, filed August 19, 1895, is overruled.
In the case of Journeycake v. The Cherokee Nation, the motion of the complainant for a further decree, filed July 5, 1895, is overruled.
In the case of Whitmire, trustee, v. The Cherokee Nation, the application of the claimant to reopen the decree and for the appointment of commissioners to reascertain the number of the freedmen and for judgment for $1,300,000 is overruled.
In the same case the motions of the defendant, The Cherokee Nation, for a rehearing, filed July 20,1895, and for a new trial, filed November 3,1895, will be set down for hearing on the 3d' day of February next, or will be heard on any motion day upon which the parties may agree.
“Court oe Cladvis,
“ Washington, February 18,1896.
“Hon. Daniel M. Browning-,
“ Commissioner of Indian-Affairs.
“ Sir : The court is informed that the Commissioner of Indian Affairs desires its opinion in regard to the fifth of the proposed instructions referred for the consideration of the Secretary of the Interior February 15,1896.
“ The decree in this case follows and refers to Article IX of the treaty with the Cherokee Nation, July 19,1866, and the persons therein designated are .the complainants in this case, entitled to payment under the decree.
*148 "The court is of the opinion that the clauses in that article in these words, 1And are now residents therein, or who may return within six months, and their descendants,’ were intended, for the protection of the Cherokee Nation, as a limitation upon the number of persons who might avail themselves of the provisions of the treaty; and consequently that they refer to both the freedmen and the free colored persons previously named in the article. That is to say, freedmen and the descendants of freedmen who did not return within six months are excluded from the benefits of the treaty and of the decree.
“ The court is also of the opinion that this period of six months extends from the date of the promulgation of the treaty, August 11,1866, and consequently did not expire until February 11, 1867.
“ Wm. A. Bichardson,

"Chief Justice.”

April 15,1896.
The court is of the opinion that the Act 2d March, 1895 (28 Stat L., p. 910, sec. 11), prescribes the manner in which payments per capita shall be made and that the matter of payment is exclusively within the jurisdiction of the Secretary of the Interior.
The court, after further consideration, adheres to the opinion communicated to the Commissioner of Indian Affairs February 18,1896.
The within motion for instructions is overruled.